**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| CARRIE MAFFEO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:16-cv-01987-TWP-MPB |
| | ) | |
| BUTLER UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on a Motion for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56 by Defendant Butler University ("Butler") ([Filing No. 30](#)). Following a shoulder injury, surgery, and complications with recovery, Plaintiff Carrie Maffeo ("Maffeo") requested and was granted leave under the Family and Medical Leave Act, 29 U.S.C. § 2601, ("FMLA"), from her employment at Butler. At the expiration of her FMLA leave, she needed additional time off to recover, and Butler provided additional unpaid time off. When she sought to return to work, Butler and Maffeo disagreed regarding the conditions and timing of her return. Maffeo initiated this action, asserting claims for disability discrimination and retaliation under the Americans with Disabilities Act, 42 U.S.C. § 12101 ("ADA"). Butler moved for summary judgment, arguing that Maffeo did not suffer an adverse employment action and was not a qualified individual when she initially sought to return to work. For the following reasons, the Court **grants** Butler's Motion for Summary Judgment.

## I.    BACKGROUND

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, the facts are presented in the light most favorable to Maffeo as the non-moving

party. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Butler is a private university located in Indianapolis, Indiana. Maffeo, a current employee of Butler began working there in 2003. Maffeo is an Assistant Professor of Pharmacy Practice and Director of the Health Education Center (also known as "Healthy Horizons") in Butler's College of Pharmacy and Health Sciences ([Filing No. 31-1 at 2](#)–4; [Filing No. 31-3 at 2](#); [Filing No. 31-2 at 4](#)).

While on a snowboarding trip in Colorado in late 2014 or early 2015, Maffeo injured her shoulder during "a pretty bad wipeout." ([Filing No. 31-2 at 8](#).) Two days after the fall, she went to an emergency room because she was experiencing pain in her left shoulder. An examination was conducted and x-rays were taken. Maffeo was told that "everything look[ed] good," and she was instructed to do exercises to help her shoulder. She returned home and returned to work, resting her shoulder as well as doing the recommended exercises. *Id.* at 9.

Maffeo continued to have problems with her shoulder. For about four months she felt something was wrong and her shoulder kept slipping. Maffeo's husband encouraged her to see a doctor, however she delayed seeing a doctor because of her busy schedule. In early April 2015, Maffeo's shoulder slipped while she was pulling a garbage can, and she decided to go to an urgent care medical facility. She followed up the urgent care visit with visits to two other physicians to get second and third opinions regarding shoulder surgery, which was recommended. *Id.*

Maffeo scheduled surgery on her shoulder for April 28, 2015, because the then-current semester and final exams would be completed. Her doctors told her the recovery period after surgery would likely be two to four weeks. Maffeo communicated with Butler about the shoulder

surgery and her plan for taking time off from work. She initially requested four weeks of FMLA leave, which Butler granted. *Id.* at 9–10.

Maffeo underwent shoulder surgery at the end of April as planned, and the initial prognosis after surgery was positive. Her arm was immobilized in a sling during the four weeks following surgery. At the end of four weeks, her sling was removed, but she was having unusual pain with numbness and burning in her hand. Her doctor told her that she would need more time off work to recover, so she requested additional FMLA leave, which Butler granted. Unfortunately, near the end of June, Maffeo lost feeling in her entire arm. She continued her FMLA leave into late July ([Filing No. 31-2 at 10](#)–11).

In early July, "it became apparent that things were seriously wrong with [her] arm," so Maffeo worked with Butler to receive additional time off to recover. *Id.* at 11. Her FMLA leave was set to expire at the end of July, so Maffeo requested additional time off as an accommodation under the ADA. Butler held an ADA conference with Maffeo on August 6, 2015, where they discussed her condition, prognosis, and treatment plan, which at that point was unknown. Maffeo was in agreement with the outcome of the ADA conference, that she would be given time off as an accommodation because of her uncertain prognosis. At that time, Maffeo felt that Butler was concerned for her and wanted to help her and provide the time off that she needed to heal. *Id.* at 11–12.

While Maffeo was on leave, her work assignments at Butler were temporarily reassigned. She was scheduled for a shoulder re-evaluation in early October 2015. Butler held another ADA conference with Maffeo on October 20, 2015, soon after Maffeo's next doctor's appointment. Because Maffeo's prognosis was still uncertain after her doctor's appointment, Butler and Maffeo agreed that continued time off was a reasonable accommodation. As an additional

accommodation, Butler also allowed Maffeo to participate via Skype in an interview with a Healthy Horizons job applicant. They determined that another ADA conference should be held after Maffeo's December 1, 2015, doctor's appointment. *Id.* at 12–13; [Filing No. 31-10 at 2](#)–6. Maffeo was asked to request from her doctor more details than just "off work until the next appointment." ([Filing No. 31-10 at 4](#).) It was also explained that Maffeo would be required to provide medical updates in order "to make future accommodation determinations." *Id.* at 5.

The next ADA conference was held on December 3, 2015. Maffeo informed Butler that she had improved range of motion and was making progress, however she had another scheduled for December 8, 2015. Her doctor's note indicated that she could not work for the next two weeks, and there would be another follow-up after the December 8, 2015 surgery ([Filing No. 31-11 at 2](#)). Maffeo asked if she could work from home for the Spring 2016 semester, and Butler responded as follows: "[n]eed documentation from physician with specific restrictions, details and time frames. Will consult with Dean and Dept. Chair to see if essential job functions can be fulfilled given the restrictions." *Id.* at 4. Maffeo agreed that this approach was reasonable ([Filing No. 31-2 at 16](#)). Although Butler was aware that Maffeo wanted to return to work for the Spring 2016 semester, Butler did not inform her of when it would need set restrictions and accommodations from her doctors. ([Filing No. 38-1 at 4](#)–7.)

The parties agreed that continued time off was a reasonable accommodation, and they tentatively scheduled the next ADA conference for the week of December 14, 2015, after Maffeo's surgery and re-evaluation. It was reiterated that "Maffeo is responsible to provide the medical update necessary to make future accommodation determinations." ([Filing No. 31-11 at 5](#).)

During the December 3, 2015 ADA conference, Jane Gervasio ("Gervasio"), a Butler professor and Maffeo's department chair, explained that "we have only so much time, and then I

have to let my faculty prepare to give a lecture.  And so there has to be a certain time that if [Maffeo] cannot return, that I have to get my faculty prepped to give the lecture in her place." (Filing No. 31-4 at 10.)  Gervasio also informed Maffeo that "At this time, I've been advised that I cannot guarantee what your position will look like or what your position will be when you return." (Filing No. 31-2 at 16.)  Maffeo "left [the] meeting very upset." *Id.*

No updates were provided before or during the week of December 14, 2015, so the tentatively scheduled ADA conference was not held that week.  Maffeo sent an email to Butler on December 21, 2015, reporting that her surgery went well and she was making progress.  She had a follow-up appointment with her orthopedic doctor scheduled for January 5, 2016, and she requested that the next ADA conference be held on January 8 (Filing No. 31-12 at 3).

Anila Din ("Din"), a director in Butler's human resources department who had been participating in Maffeo's ADA conferences, replied to Maffeo's email on January 4, 2016.  Din apologized for the slow response, explaining that she had been out of the office the week that Maffeo sent her email and that an ADA conference would not work that week because Gervasio had other meetings scheduled.  She asked Maffeo for times the following week that would work for a meeting.  *Id.*  Three days later, Maffeo responded with available times that she could meet the following week, and they set the next ADA conference for January 13, 2016. *Id.* at 2.

Maffeo provided four documents to Butler for the January 13, 2016, ADA conference (Filing No. 31-2 at 18).  She provided a "Butler University Certification of Health Care Provider of Employee's Fitness for Duty," which was signed by Dr. Robert Klitzman on January 5, 2016.  Dr. Klitzman certified that Maffeo could return to work on January 12, 2016, with reasonable accommodations (Filing No. 31-13 at 2).  She also provided a letter from Dr. Klitzman dated January 5, 2016, which stated, "At this point, she is continuing to be treated; however, we are

going to let her return to work with accommodations." *Id.* at 3. Dr. Klitzman recommended accommodations of a work station that would allow a chair that reclines to forty-five degrees with a leg extension and support as well as a laptop desk with forearm support and a document holder. *Id.* Dr. Klitzman concluded that Maffeo "may also need a flexible work schedule that would allow her to work from home when she is having increased nerve symptoms; however, I will defer to Dr. Kelly Paul's judgment on that matter." *Id.*

Maffeo also provided a letter from Dr. Kelly Paul dated January 13, 2016 (the same day as the ADA conference). Dr. Paul noted that, "[b]ased off her pain levels and physical limitations/improvements at this time I believe she is capable of returning back to work, but with the accommodations of work only from the home environment for now." *Id.* at 5. Dr. Paul agreed with Dr. Klitzman's recommendation of providing a reclining work station. Dr. Paul suggested that with continued treatment, therapy, and progress, Maffeo "will hopefully be cleared of all restrictions in the next 3-6 months." *Id.*

The last document Maffeo provided at the January 13, 2016 ADA conference was a Butler form, "Section 504/ADA Request for Accommodation," which she signed on January 13, 2016. In the document, Maffeo requested a reclining work station, periodic rest breaks, and voice recognition software. She also requested as an accommodation "a flexible work schedule and flexible use of leave time" and "a self-paced workload—specifically beginning with two half-days per week in the office which would gradually increase in accordance with my physicians' recommendations and telecommuting the remaining time to complete my other duties (re-assess hours at appointment with Dr. Paul on 2/18/16)." *Id.* at 6–7.

Based on the documents that Maffeo provided to Butler, Gervasio and Din were uncertain whether Maffeo could work on campus, and if so, how much time she could spend on campus

([Filing No. 31-4 at 17](#)).  They requested that Maffeo provide clarification from her doctors about how often she could work on campus and how often she could work from home ([Filing No. 31-2 at 20](#); [Filing No. 31-4 at 15](#)).  Gervasio needed to talk with the college dean about the accommodations and available work opportunities, and they would convene another ADA conference ([Filing No. 31-2 at 20](#); [Filing No. 31-4 at 15](#)–16).

Regarding the January meeting, Maffeo was told "a lot of [the information gathering] was a formality and [she] was gonna be back to work the next week."  ([Filing No. 31-2 at 28](#).)  She felt that Butler was trying to coerce her to change to part time work because Gervasio and Din questioned her ability to do her job.  *Id.* at 27.  One week later, on January 20, 2016, she emailed Gervasio and Din, explaining that Dr. Paul had been out of the office because of an illness and thus there was a delay in providing the clarifying documentation requested by Butler ([Filing No. 31-14 at 2](#)).  On January 21, 2016, Din informed Maffeo that she had received a fax from Dr. Paul that morning, but the fax did not provide the clarifying information that was requested.  Din sent a follow-up email to Maffeo on January 29, 2016, letting her know that she still had not received the clarifying information from Dr. Paul.  *Id.* at 4, 8.

On February 2, 2016, Dr. Klitzman sent a letter to Butler stating that Maffeo "is released to return to work full time."  ([Filing No. 31-14 at 9](#).)  The letter included Dr. Klitzman's previous recommendations of a reclining work station and periodic breaks as well as voice recognition software.  *Id.*  Din emailed Maffeo that same day to schedule another ADA conference, asking for Maffeo's availability later in the week.  *Id.* at 10.  They set the next meeting for February 10, 2016.

On February 10, 2016, Dr. Paul sent a letter to Butler explaining that Maffeo "is capable of returning back to full time work, but with the accommodations of work from the home environment, with the exception of up to 16 hours of on campus duties."  ([Filing No. 31-14 at 12](#).)

Dr. Paul again suggested that with continued treatment, therapy, and progress, Maffeo "will hopefully be cleared of all restrictions in the next 3-6 months." *Id.*

In advance of the February 10, 2016 ADA conference, Gervasio met with the college dean to assess what work might be available for Maffeo. Based on their assessment, it was determined that there was not enough work available for Maffeo to return in the middle of the semester (Filing No. 31-4 at 16–18). Maffeo's colleagues had delivered all but one of the lectures that she normally would have given (the final lecture was the second of a two-part lecture), and an interim director was running Healthy Horizons, seeing patients, precepting with the resident, and attending service meetings. Butler determined that it would be disruptive to student advisees and the precepting resident student to change their advisor and preceptor in the middle of the semester. *Id.* at 11–12, 20; Filing No. 31-7 at 3–4. Gervasio identified a new teaching opportunity for Maffeo through a recently-launched bachelor of health science program and a data-gathering and reporting project in Healthy Horizons, but this work was not available during the Spring 2016 semester (Filing No. 31-4 at 19).

At the February 10, 2016, ADA conference, the parties reviewed the new documentation from Maffeo's doctors, including the return-to-work accommodations. Maffeo reported an inability to use her left arm and constant pain, but indicated that she could perform the essential functions of her job with the requested accommodations provided. She also acknowledged that she still needed assistance with grooming, dressing, lifting, driving, and meal preparation and that her sleep, driving, and standing were still impacted. Butler indicated that it would provide the requested accommodations of a reclining work station, periodic breaks, and adequate work space, but additional time off was a necessary accommodation because work was not available to allow Maffeo to return in the middle of the semester (Filing No. 31-15 at 2–6). Butler explained,

There is not sufficient work for the Spring 2016 semester to allow for full time work on campus or at home. Duties were assigned prior to the Spring semester in the interest of students and the University therefore at this time, there is no fulltime work that can be assigned. In terms of an interactive process, we discussed how changing the advising relationship at this time will not be in the best interest of the students. Teaching, advising, patients and other assignments have been reassigned and are well underway. The program and residency accreditation is on hold right now, given that there is no resident planned and that the Dean position in COPHS is undergoing transition. The Health[y] Horizon's position was divided and disseminated at the onset of Dr. Maffeo's leave last year and the position does not exist at this time.

*Id.* at 5.

Butler concluded that it would provide additional time off as an accommodation to Maffeo until May 1, 2016, when the semester ended, and they would meet again in mid-April to finalize arrangements for Maffeo's return to work for the Summer and Fall terms. Maffeo disagreed with the information and believed she was a victim of disability discrimination, however, she agreed to the accommodation of additional time off only because she felt under duress to accept it or otherwise lose her job. *Id.* at 6–8.

Before the February 10, 2016 conference, Maffeo had submitted a charge of discrimination against Butler to the United States Equal Employment Opportunity Commission ("EEOC"), dated February 1, 2016 (Filing No. 31-16 at 2–3). She charged Butler with disability discrimination and retaliation because it had not allowed her to return to work on January 12, 2016. *Id.* at 2. Butler received notice of the EEOC charge on February 11, 2016, the day after the February 10 ADA conference (Filing No. 31-17 at 2–3).

Soon after the February 10, 2016 ADA conference and after receiving the EEOC charge, Din reviewed a list of vacant positions at Butler to determine whether Maffeo was qualified for any of the positions and whether she could temporarily fill a vacant position. However, Din concluded that Maffeo was not qualified to fill any of the vacant positions (Filing No. 31-18 at 2).

Din sent a letter dated April 28, 2016 to Dr. Paul and requested updated information about Maffeo's restrictions and work abilities in preparation for the next ADA conference. On June 14, 2016, Din received Dr. Paul's response, which explained that Maffeo could return to full time work on campus with accommodations of a reclining work station, periodic breaks, voice recognition software, and adequate space to stretch and lay down (Filing No. 31-19 at 2–5; Filing No. 31-1 at 9).

Another ADA conference was held on June 23, 2016. At this conference, Butler informed Maffeo that it would provide each of the accommodations that Dr. Paul recommended and that Maffeo requested, and she could return to work. Maffeo asked for time to consider Butler's proposal and review the conference paperwork. She received an updated contract, job description, and responsibilities, and the accommodations were provided as requested. Maffeo returned to work on July 11, 2016, to her same positions as an associate professor and director of Healthy Horizons (Filing No. 31-20 at 2–6; Filing No. 31-2 at 25).

## II.   SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted).

Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

The Court views the designated evidence in the light most favorable to Maffeo, as the non-moving party, and draws all reasonable inferences in her favor. *Bright v. CCA*, 2013 U.S. Dist. LEXIS 162264, at *8 (S.D. Ind. Nov. 14, 2013). "However, employment discrimination cases are extremely fact-intensive, and neither appellate courts nor district courts are obliged in our adversary system to scour the record looking for factual disputes." *Id.* at *8–9 (citation and quotation marks omitted).

## III.  DISCUSSION

Maffeo's claim boils down to "Defendant's refusal to let her return to work when she was able to and had been cleared by her doctors and that Defendant's refusal was because of [her] disability." ([Filing No. 37 at 13](Filing No. 37 at 13).)  She "contends that Defendant began to view her as 'damaged

goods' and that beginning in January 2016 attempted to force [her] out of employment with the Defendant by economically harming her through not letting her return to full time employment." *Id.*

Butler asserts that it is entitled to summary judgment on the disability discrimination and retaliation claims because Maffeo was not a "qualified individual" at the time when she wanted to return to work, she did not suffer an adverse employment action, and the evidence shows no reasonable juror could conclude Butler's decision to continue Maffeo's time off was because of her disability. Pursuant to Local Rule 56.1(g), and without intent to be otherwise binding, Butler stipulates that Maffeo is disabled consistent with the definition set forth in 42 U.S.C. § 12102(1)." ([Filing No. 32 at 2](#) n.1.)

## A. **Disability Discrimination Claim**

Under the ADA, employers are prohibited from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 4 2 U.S.C. § 12112(a). The Seventh Circuit has recently explained the scope of the ADA:

> The ADA is an antidiscrimination statute, not a medical-leave entitlement. The Act forbids discrimination against a "qualified individual on the basis of disability." [42 U.S.C.] § 12112(a). A "qualified individual" with a disability is a person who, "with or without reasonable accommodation, can perform the essential functions of the employment position." *Id.* § 12111(8). So defined, the term "reasonable accommodation" is expressly limited to those measures that will enable the employee to work. An employee who needs long-term medical leave *cannot* work and thus is not a "qualified individual" under the ADA. *Byrne v. Avon Prods., Inc.*, 328 F.3d 379, 381 (7th Cir. 2003).

*Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 479 (7th Cir. 2017) (emphasis added).

To support her claim for disability discrimination, Maffeo must show, "(1) she is disabled; (2) she is otherwise qualified to perform the essential functions of her job with or without reasonable accommodation; and (3) her employer took an adverse job action against her because of her disability or without making a reasonable accommodation for it." *Basden v. Prof'l Transp., Inc.*, 714 F.3d 1034, 1037 (7th Cir. 2013). Butler stipulates for purposes of summary judgment only that Maffeo is disabled. Thus, as Maffeo acknowledges, she must show genuine issues of material fact regarding her status as a "qualified individual," that she suffered an adverse employment action, and that Butler undertook the adverse employment action because of her disability.

Butler argues that Maffeo was not a qualified individual at the time that she wanted to return to work because she was not able to perform the essential functions of her job even with accommodations. Relying on the Seventh Circuit's decision in *Basden*, Butler asserts that "[a]n employer is generally permitted to treat regular attendance as an essential job requirement and need not accommodate erratic or unreliable attendance," *id.*, and further "[a] plaintiff whose disability prevents her from coming to work regularly cannot perform the essential functions of her job, and thus cannot be a qualified individual for ADA purposes." *Id.*

Butler argues that Maffeo's job description clearly showed that regular on-campus attendance was an essential part of her job. Her responsibilities as Director at Healthy Horizons required her to provide in-person instruction and oversight to students and residents in a clinical setting. This in-person presence was necessary for optimal teaching and maintaining appropriate patient safety. Maffeo also was required to teach courses, and courses could be taught online only if arrangements were made in advance of the start of a semester so that students would know they

were signing up for an online course. No arrangements were made before the Spring 2016 semester to allow Maffeo to teach her courses online from home.

Butler contends that Maffeo's on-campus presence was necessary because she needed to conduct regular preventative screening sessions for faculty and staff, which Maffeo performed two days a week during the Spring 2015 semester ([Filing No. 31-2 at 7](#)). She also was required to provide academic advice to students and to supervise and advise students in Healthy Horizons. These responsibilities were busiest in March and April and required approximately ten hours of in-person advising each week. *Id.* at 7–8.

When analyzing the "qualified individual" element, "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8). The essential functions of Maffeo's job required her to perform most of her work on-campus, and the evidence shows that as of February 10, 2016, Maffeo could have worked on campus, at most, sixteen hours a week ([Filing No. 31-14 at 12](#)). Butler argues that the math does not add up, explaining that two days of on-campus preventative screenings at Healthy Horizons, ten hours of in-person academic advising, and additional time teaching and precepting surpass the maximum sixteen hours per week that Maffeo was capable of working on campus during the Spring 2016 semester. Maffeo testified that she worked four days a week on campus and only one day a week from home before she went on FMLA leave in April 2015 ([Filing No. 31-2 at 22](#)–23). Butler argues Maffeo simply was not a "qualified individual" because she could not perform the essential functions of her job by being on campus to fulfill those responsibilities.

In response, Maffeo asserts that she was a qualified individual in January 2016 because she could perform the essential functions of her job. In her deposition, she testified that her job requirements were flexible, and the amount of time required on campus varied greatly. Maffeo argues that, while the paperwork from her doctors noted that she could be on campus sixteen hours a week, she also discussed with Butler during the January and February 2016 ADA conferences that she could gradually increase her time on campus as the year progressed. Maffeo asserts that she could have performed aspects of each of her job functions from home and could have completed her work at home and with only sixteen hours on campus. She also points out that, while she was on leave, she assisted from home with administrative duties such as responding to emails and conducting a Skype interview.

Maffeo also argues that Butler allowed other employees to return to work in the middle of an on-going semester and allowed other employees to work from home throughout a semester,[1] and thus, the fact that she wanted to return to work in the middle of a semester and wanted to work from home does not defeat the "qualified individual" element. Responding to Butler's argument that it had advance notice of when these other employees would return to work, Maffeo asserts that Butler knew in Fall 2015 that she wanted to return to work in Spring 2016, but it did nothing to plan ahead for her return. She argues that this evidence defeats Butler's position that she was not a qualified individual and that it also shows pretext for Butler's proffered nondiscriminatory reason for not allowing her to return to work in the middle of a semester.

Maffeo's suggestion that she could perform her essential job functions from home is not supported by evidence. The evidence that Maffeo designated is her own deposition testimony of

---

[1] Maffeo lists thirteen other employees of Butler who were permitted to return to work during an on-going semester after being out on leave or who were permitted to work from home. Almost all of the examples involved maternity leave (Filing No. 37 at 11–12). Maffeo designates her responses to Butler's interrogatories to support her argument (Filing No. 38-4 at 15–18).

her belief that college faculty generally have flexible work schedules and her explanation that she had difficulty in January 2016 getting Dr. Paul to certify how many hours she could work. (*See* Filing No. 31-2 at 17 (pg. 94 ln. 10–24, pg. 97 ln. 1–16).) Maffeo ignores the written job description for her position (which is given considerable weight under 42 U.S.C. § 12111(8)), and she cannot create a genuine dispute about her essential job functions by giving her own opinion about the flexibility in college faculties' schedules. Butler asserts and the Court agrees, that Maffeo is ignoring her responsibilities beyond simply teaching courses, which required her presence on campus, such as precepting students and residents and conducting preventative screenings at Healthy Horizons.

In addition, while Maffeo expressed her desire to return to work for the Spring 2016 semester, she never provided an anticipated return-to-work date during the Fall 2015 semester, and Maffeo knew that Butler required additional information from her doctors to evaluate her potential return date. She knew that this additional information was not provided month after month throughout numerous ADA conferences and into the Spring 2016 semester.

Concerning Maffeo's list of similarly situated Butler employees, Butler argues that none of the professors listed by Maffeo are similarly situated to her and cannot support her argument that she was a "qualified individual". There is a difference between FMLA leave, which requires an employer to return the employee to work, and the ADA, which requires accommodations and may include unpaid time off. Butler also notes the difference among Maffeo and the other professors, who provided an actual return-to-work date months before leave began, which allowed for temporary assistance and preparation to avoid disruption. Maffeo failed to designate evidence showing the other professors were directly comparable to her; there is no evidence that the other

professors' supervisors or their essential job functions were similar to Maffeo's responsibilities as the Healthy Horizons director.

Maffeo's claim of being a qualified individual capable of performing the essential functions of her job is not supported by the designated evidence. As directed by the ADA, the Court considers "the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8). Butler's written job description notes that Maffeo was responsible for managing, teaching, and precepting in Healthy Horizons, including "direct precepting of students and residents on rotations in the Health Education Center" and conducting "regular preventative screening sessions for faculty and staff at Butler." (Filing No. 31-3 at 2.) These responsibilities required an in-person, on-campus presence to maintain optimal teaching and appropriate patient safety. Maffeo failed to designate evidence disputing this fact.

The evidence—Maffeo's own deposition testimony—shows that Maffeo performed the regular preventative screening sessions for faculty and staff two days a week during the Spring 2015 semester (Filing No. 31-2 at 7). She also testified that she provided academic advising to students and supervised and advised students in Healthy Horizons, which required approximately ten hours of in-person advising each week. *Id.* at 7–8. Furthermore, Maffeo testified that she worked four days a week on campus and only one day a week from home before she went on FMLA leave in April 2015. *Id.* at 22–23.

Maffeo cannot create a genuine dispute by asserting her own opinion of what her essential job functions consisted of and her personal belief that college faculty generally have flexible schedules. Maffeo's own deposition testimony shows the amount of time she was required to spend

on campus to fulfill her essential job functions. She cannot create a genuine issue of material fact by simply asserting her generic opinion that she could have performed her work from home. The designated evidence shows that Maffeo continued to struggle with basic daily activities and continued needing assistance well into 2016 ([Filing No. 31-9 at 2](); [Filing No. 31-10 at 2]()–3; [Filing No. 31-11 at 2]()–3; [Filing No. 31-15 at 3](); [Filing No. 31-20 at 3]()). Her own doctors' notes indicated that she could only work from home (January 2016) and then later that she could only work sixteen hours in a week on campus (February 2016) ([Filing No. 31-13 at 5](); [Filing No. 31-14 at 12]()).

On January 13, 2016, with the semester already underway, Maffeo herself requested an accommodation of a flexible work schedule of only "two half-days per week in the office." ([Filing No. 31-13 at 6]()–7.) She recommended that they could reassess the hours at her next doctor's appointment more than a month later on February 18, 2016. *Id.* at 7. From the designated evidence, it is clear that working only eight hours on campus would not have allowed Maffeo to complete the essential functions of her job.

Butler was justified in seeking additional information from Maffeo and her doctors regarding her limitations, restrictions, and abilities before allowing her to return to work. The evidence shows that Butler legitimately expected Maffeo to be on campus to perform her essential job functions, and because she did not provide medical certification of her ability to work on campus before the start of the Spring 2016 semester (and well into the semester), Butler was justified in viewing Maffeo as unable to perform her essential job functions before and into the Spring 2016 semester.

Concerning Maffeo's argument about other professors returning to work in the middle of a semester or working from home, the Court notes that the essential difference between Maffeo and her proffered comparators is certainty and accuracy. The other professors provided a certain

date that they would return to work after their leave period ended. Their anticipated return-to-work dates were accurate in that they in fact did return to work on (or almost exactly on) their scheduled return-to-work date. Maffeo's situation was different. There was no certainty regarding when she could return to work. There was no certainty regarding how much time she could spend working from home or working on campus. There was no advance notice of a certain anticipated return-to-work date. These differences are crucial because certainty and accuracy allowed Butler to plan for its students' needs and the school's needs with the other professors' absences. The lack of certainty and accuracy with Maffeo's ADA accommodation of time off, following her initial FMLA leave, did not allow Butler to plan for its students' needs and the school's needs without a disruption.

As the Seventh Circuit explained, "[a]n employer is generally permitted to treat regular attendance as an essential job requirement and need not accommodate . . . unreliable attendance." *Basden*, 714 F.3d at 1037. "A plaintiff whose disability prevents her from coming to work regularly cannot perform the essential functions of her job, and thus cannot be a qualified individual for ADA purposes." *Id.* Furthermore, "'[t]he rather common-sense idea is that if one is not able to be at work, one cannot be a qualified individual.'" *Severson*, 872 F.3d at 481 (quoting *Waggoner v. Olin Corp.*, 169 F.3d 481, 482 (7th Cir. 1999)). In addition, "an employer is not required to 'create a new job or strip a current job of its principal duties to accommodate a disabled employee.'" *Id.* at 482 (quoting *Gratzl v. Office of Chief Judges of 12th, 18th, 19th & 22nd Judicial Circuits*, 601 F.3d 674, 680 (7th Cir. 2010)). With these legal principles in mind, and in light of the designated evidence discussed above, the Court determines that summary judgment in favor of Butler is appropriate on Maffeo's disability discrimination claim because Maffeo was not

able to perform the essential functions of her job, and thus, she was not a qualified individual under the ADA.

Because the designated evidence makes clear that Maffeo was not a "qualified individual," thereby defeating her claim for disability discrimination, the Court need not determine Butler's contentions' that Maffeo did not suffer an adverse employment action, and a reasonable juror could not conclude Butler's decision to continue Maffeo's time off was because of her disability.

## B.    <u>Retaliation Claim</u>

The ADA prohibits "discriminat[ing] against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."  42 U.S.C. § 12203(a).  To support her ADA claim for retaliation, Maffeo must show: (1) she engaged in a statutorily protected activity; (2) Butler took an adverse employment action against her; and (3) there is a causal connection between the protected activity and the adverse employment action.  *Pagel v. Tin Inc.*, 695 F.3d 622, 631 (7th Cir. 2012).

Butler acknowledges that Maffeo's request for an accommodation—being able to return to work with accommodations—is statutorily protected activity and satisfies the first element of an ADA retaliation claim.  However, Butler asserts that Maffeo cannot show she suffered an adverse employment action or that there is any causal connection between the protected activity and any adverse employment action. Butler also argues that Maffeo is unable to show its nondiscriminatory reason for not allowing her to return to work is pretextual.

Butler asserts that it did not take any adverse employment action against Maffeo because it simply maintained the status quo of providing her time off work until she was able to return to work.  Butler did not change Maffeo's status from paid time off to unpaid time off or diminish her

compensation in any other way. After its alleged retaliation Maffeo participated in ADA conferences and ultimately returned to work with reasonable accommodations, so it is difficult to see how an employee might be dissuaded from engaging in protected activity when Maffeo was not.

In the context of a retaliation claim, an actionable adverse employment action is one that "might dissuade a reasonable employee from engaging in protected activity." *Benuzzi v. Bd. of Educ. of Chicago*, 647 F.3d 652, 665 (7th Cir. 2011). Butler argues there is no causal connection between Maffeo's protected activity and its decision to continue her unpaid time off. Butler asserts there is no evidence of retaliation and the timing of continuing Maffeo's time off is not suspicious. Butler simply did not have enough work for her to return to in the middle of the semester, and Butler had been requesting additional information about her limitations, which she failed to timely provide. Butler argues that Maffeo has no evidence that these nondiscriminatory reasons for continuing her time off are pretextual.

In response, Maffeo asserts, "The same facts underlie Maffeo's retaliation and discrimination claims. For this reason, Maffeo relies on her analysis of adverse actions contained in Section IV.B.2. of this brief to support her retaliation claim under the ADA." ([Filing No. 37 at 26](#).) "Likewise, Maffeo relies on her arguments contained in Section IV.B.3. of this brief to support her claim of causation." *Id.* Maffeo also argues that the timing of Butler's decision is "particularly notable in reference to a retaliation claim." *Id.* She asserts,

> While Defendant had already been accommodating Maffeo with unpaid leave, it was only when Maffeo began to suggest specific restrictions and accommodations that Defendant's mentality changed. While Defendant may be correct that since it allowed Maffeo to continue leave and eventually return to work, other employees would not be intimidated to seek accommodations, a juror could conclude that Defendant's abrupt about face would dissuade other employees from requesting specific accommodations and restrictions beyond simple unpaid leave.

*Id.* at 26–27. The Court is not persuaded because Maffeo's alleged change in demeanor or mentality lacks evidentiary support. The only evidence Maffeo designated for this assertion is her deposition testimony concerning her personal belief that college faculty generally have flexible work schedules and her explanation that she had difficulty in January 2016 getting Dr. Paul to certify how many hours she could work. (*See* Filing No. 31-2 at 17 (pg. 94 ln. 10–24, pg. 97 ln. 1–16).) This does not support Maffeo's claim that Butler's demeanor or mentality toward her changed.

Maffeo has ignored the undisputed fact that "within months of Butler's alleged retaliation, she requested and received additional accommodations 'beyond simple unpaid leave,' namely, returning to her same positions as before her leave with an ergonomic workstation, time off to attend physical therapy, and other accommodations." (Filing No. 40 at 17.)

Even assuming that continuing an ongoing period of unpaid time off was an adverse employment action, Maffeo still cannot support her retaliation claim because there is no evidence that continuing her time off was connected to her request for accommodations to return to work with a flexible schedule, reclining workstation, and other accommodations. Rather, the evidence is clear that Maffeo asked Butler to provide the ADA accommodation of additional time off after her FMLA leave expired. The parties then engaged in a series of ADA conferences spanning August 2015 through June 2016, which resulted in continuing Maffeo's accommodation of time off because she was not able to return to work with her shoulder injury and because her doctors did not provide sufficient certification that she could return to work until the Spring 2016 semester was already underway. The evidence does not support a claim that Butler retaliated against Maffeo because she engaged in statutorily protected activity. Therefore, the Court **grants** Butler's Motion for Summary Judgment on the retaliation claim.

## IV.  CONCLUSION

For the foregoing reasons, Defendant Butler University's Motion for Summary Judgment

is **GRANTED** (Filing No. 30).  Final judgment will issue under separate order.

**SO ORDERED.**

Date:  2/20/2018

_____

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

John H. Haskin
JOHN H. HASKIN & ASSOCIATES
jhaskin@jhaskinlaw.com

Brent R. Borg
CHURCH CHURCH HITTLE & ANTRIM
bborg@cchalaw.com

Keenan D. Wilson
JOHN H. HASKIN & ASSOCIATES
kwilson@jhaskinlaw.com

Jessica L. Billingsley
CHURCH CHURCH HITTLE & ANTRIM
jbillingsley@cchalaw.com